UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ANDREW RYANN, on behalf of himself and a Class, | ) ) ) | |
| PLAINTIFF, | ) ) ) | Civil Action No. |
| | ) | Jury Demanded |
| SAUL EWING ARNSTEIN & LEHR, LLP, | ) ) ) | |
| DEFENDANT. | ) | |

## CLASS AND INDIVIDUAL COMPLAINT

Plaintiff, Andrew Ryann, brings this action to secure redress from unlawful credit and collection practices engaged in by Defendant Saul Ewing Arnstein & Lehr, LLP. Plaintiff alleges violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. ("FDCPA") both individually and on behalf of a class.

## VENUE AND JURISDICTION

1. Jurisdiction of this Court arises under 15 U.S.C. § 1692k(d), and 28 U.S.C. §§ 1331 and 1337.

2. Venue in this District is proper under 28 U.S.C. § 1391 because Defendant conducts business in this district, and Defendant attempted to collect a debt from a consumer that resides in this district.

## PARTIES

3. Plaintiff Andrew Ryann ("Plaintiff") is an individual and resident of the State of Illinois, and is a "consumer" as defined at 15 U.S.C § 1692a(3) of the FDCPA.

4. Defendant Saul Ewing Arnstein & Lehr, LLP, ("Defendant") is a law firm engaged as a "debt collector" as defined by and within the meaning of 15 U.S.C. § 1692a(6) the FDCPA, and is engaged in the business of collecting debts in this State where Defendant regularly collects or attempts to collect defaulted consumer debts owed or due or asserted to be owed or due another.

5. Defendant maintains a website, www.saul.com, wherein as of the date of the filing of this lawsuit, it states in part as follows:

> **CONDOMINIUM AND COMMUNITY ASSOCIATIONS:**
>
> **Condominium, community association and cooperative apartment board members are volunteers elected by the members of their community and charged with a fiduciary duty to make decisions only with the best interests of the entire community in mind. Board members must tread carefully when balancing the responsibility to maintain the community property in a first-class condition while keeping their neighbors content by stabilizing assessment payments. On an almost daily basis, board members are exposed to a wide variety of legal questions arising from proper interpretation of the association's governing instruments, covenant enforcement and rule violation issues, contract negotiations with vendors and service providers, collection of delinquent assessments, and foreclosure defense as well as mitigating liability when things go wrong.**
>
> **Entrenched in this sector for decades, attorneys in Saul Ewing Arnstein & Lehr's Condominium and Community Associations Practice understand the nuances and complexities distinct to the operation and administration of condominiums, community associations and cooperative apartments. We serve as trusted advisors to more than 500 condominium, community association and cooperative clients by providing governance, transactional, litigation and administrative legal services including:**
>
> **…**
>
> **Litigation**
>
> - **Defending claims brought against the association and board members**
> - **Assisting with governing instrument enforcement**
> - **Prosecuting injunction, temporary restraining order and declaratory judgment claims**
> - **Prosecuting construction defect claims and actions brought by the association against developers**

- **Assisting with the collection of unpaid assessments, fines, late fees and other**
- **charges**

Saul Ewing Arnstein & Lehr LLP, "Condominium and Community Associations", https://www.saul.com/industries/condominium-and-community-associations, (Accessed 19 Sept. 2019)

6. Defendant regularly collects defaulted condominium assessments debt from residential consumers on behalf of condominium associations throughout Illinois.

7. Defendant is authorized to conduct business in Illinois, and maintains an office and authorized registered agent therein.

8. Defendant has filed over 500 lawsuits in Cook County, Illinois within the last year to collect defaulted or past-due condominium assessments from consumers, on behalf of the condominium associations it represents.

## FACTS

9. Plaintiff resides in a condominium located at 5455 North Sheridan Road, Unit 2712 in Chicago, Illinois. (the "Property").

10. Plaintiff currently resides at this address, and has resided there at all times relevant to this Complaint.

11. Plaintiff incurred an alleged debt, in connection with the Property, to 5455 Edgewater Plaza Condominium Association ("Association") for past due monthly assessments and other charges stated to be owed in relation to the Property.

12. Plaintiff's alleged debt was incurred for personal, family or household purposes (hereinafter "alleged debt") and is therefore a "debt" as that term is defined by 15 U.S.C. § 1692a(5).

13. Plaintiff's alleged debt was not incurred in connection with any business purpose.

14. Plaintiff was asserted to have defaulted on the alleged debt.

15. The alleged debt included past due monthly assessments, and a number of related charges with respect to the Property.

16. The Association thereafter hired Defendant to collect the alleged debt.

17. On September 19, 2018, Defendant caused to be mailed to Plaintiff at their residence, and in connection with the alleged debt, two copies of a letter titled "NOTICE AND FINAL DEMAND FOR PAYMENT" (hereafter "Notice"). (Exhibit A, Letter).

18. Plaintiff received the Notice on or after September 24, 2018.

19. The Notice states in part that "WE ARE ATTEMPTING TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE." (Exhibit A, Letter).

20. The Notice was Defendant's first communication with Plaintiff in connection with the collection of the specific amount ($11,571.38) of the alleged debt.

21. The Notice is a form letter.

22. The Notice states the "Amount of Debt" as $11,571.38.

23. The Notice reads in part as follows:

**Pursuant to Section 9-104.1 of the Illinois Code of Civil Procedure, demand is hereby made for payment in full of the Debt within (30) days of the date of this Notice and Final Demand for Payment.**

 (Exhibit A, Letter)

24. The Notice is dated September 19, 2018.

25. The Notice was not mailed before September 20, 2018.

26. The Notice thus demands full payment of the "Amount of Debt" within 30 days of September 19, 2018, which is the date of the Notice.

27. The Notice thus demands full payment on or by October 19, 2018, which is 30 days from the date of the Notice.

28. The Notice then reads in part as follows:

**Unless full payment of the debt is made on or before thirty (30) days after the date of service of this Notice and Final demand for Payment, your right to possession of the above-referenced condominium unit will be terminated …**

(Exhibit A, Letter)

29. The Notice thus sets second distinct payment deadline of 30 days from the "date of service" of the Notice—which is 30 days from the date the Notice was *received*, as opposed to 30 days of the date listed *on the Notice*, in contravention of the requirements of Illinois law.

30. An unsophisticated consumer would be confused as to the date by which the debt would have to have been paid in full to prevent legal action.

31. Defendant demanded full payment before the expiration of the 30-day verification period, in violation of section 1692g of the FDCPA. *Walker v. Nat'l Recovery, Inc.*, 200 F.3d 500, 502 (7th Cir. 1999)

32. Plaintiff was confused by the date by which he was required to pay the alleged debt in full, as he was given two deadlines by which he was required to do so, and was given more time to dispute the alleged debt, than to pay it.

33. The Notice also contains a "Notice of Debt" as that term is understood under section 1692g of the FDCPA.

34. The "Notice of Debt" reads in part as follows:

**Federal law gives you thirty days after you receive this Notice and Final demand to dispute the validity of the Debt or any part of it…**

(Exhibit A, Letter)

35. The Notice thus gave Plaintiff more time to dispute the alleged debt than to pay it.

36. Specifically, Plaintiff was confused by the Notice, as it gave him more time to dispute the alleged debt (30 days from receipt of the Notice, which was sent by mail) than to pay it (30 days from the date *on* the Notice).

37. The "Notice of Debt" further reads in part as follows:

> **If you request proof of the Debt or the name and address and address of the original creditor within the thirty-day period that begins with your receipt of this letter, the law requires me to suspend my efforts to collect the Debt until I mail the requested information to you.**

(Exhibit A, Letter)

38. The "Notice of Debt" provided to Plaintiff by Defendant failed to inform Plaintiff that Defendant would also have to suspend any attempts to *litigate* the amount sought if a timely written dispute was communicated by Plaintiff, until or unless Defendant mailed verification to the Plaintiff.

39. The 7th Circuit has created a "safe harbor" letter in an attempt to provide guidance to debt collectors so that they do not run afoul of complying with section 1692g, which reads in part as follows:

> **The law does not require me to wait until the end of the thirty-day period before suing you to collect this debt. If, however, you request proof of the debt or the name and address of the original creditor within the thirty-day period that begins with your receipt of this letter, the law requires me to suspend my efforts <u>(through litigation or otherwise)</u> to collect the debt until I mail the requested information to you.**

> *Wolff v. Stellar Recovery, Inc.*, No. 14 C 09876, 2016 U.S. Dist. LEXIS 15208, at *10 (N.D. Ill. Feb. 5, 2016), citing *Bartlett v Heibl*, 128 F. 3d 497, 502 (7th Cir. 1997) (emphasis added).

40. In *Bartlett*, the Court warned debt collectors as follows: "We cannot require debt collectors to use "our" form. But of course if they depart from it, they do so at their risk. Debt collectors who want to avoid suits by disgruntled debtors standing on their statutory rights would be well advised to stick close to the form that we have drafted. It will be a safe haven for them, at least in the Seventh Circuit." *Id*.at 502.

41. Defendant's Notice departs from *Bartlett*, as it does not communicate (deviating from the model, suggested language in *Bartlett*) that Defendant is required to suspend its efforts to collect the debt <u>including via litigation</u> if Plaintiff requests proof of the alleged debt within the thirty day period that begins with receipt of the Notice.

42. The Notice also states in part as follows:

**<u>UNLESS THE ASSOCIATION EXPRESSLY AGREES OTHERWISE IN WRITING, ONLY FULL PAYMENT OF THE AMOUNTS DEMANDED IN THIS NOTICE WILL WAIVE THE ASSOCIATION'S RIGHT TO PROCEED WITH LEGAL ACTION AGAINST YOU AND YOUR UNIT.</u>**

(Exhibit A, Letter)

43. This statement is false, as full payment is not the "only" event that would operate to prevent legal action against Plaintiff, since a timely-communicated dispute of the alleged debt would **also** require Defendant to refrain from proceeding with legal action until it mailed verification to the Plaintiff, irrespective of whether full payment were made by Plaintiff.

44. Defendant's failure to inform Plaintiff that it could not file suit against Plaintiff if he communicated a timely written dispute to Defendant, together with the statement that "only full payment of the amounts demanded" would prevent the Association from filing suit, falsely communicates that Defendant *could* sue Plaintiff to collect the alleged debt—irrespective of whether he disputed the debt in writing within

the 30 day period provided in section 1692g, and irrespective of whether Defendant mailed verification of the alleged debt to Plaintiff.

45. An unsophisticated consumer would be confused by the Notice, as the unsophisticated consumer would not know that Defendant <u>could not</u> sue him or her if the consumer timely disputed the alleged debt in writing, <u>until or unless</u> Defendant mailed verification to said consumer—contrary to Defendant's language indicating that only "full payment" could prevent legal action being filed against Plaintiff.

46. Plaintiff was confused, nervous and irritated due to his uncertainty as to whether he could be sued if he timely sent a dispute or requested proof of the debt within the 30 day verification period, if Defendant did not first verify the alleged debt, and he suffered sleep loss, nervousness, worry, anxiety and fear as a result.

## COUNT I—FDCPA—CLASS COUNT

47. Plaintiff incorporates by reference the foregoing paragraphs.

48. Section 1692g provides as follows:

**§ 1692g. Validation of debts.**

**(a) Notice of debt; contents**

**Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—**

    **(1) the amount of the debt;**
    **(2) the name of the creditor to whom the debt is owed;**
    **(3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;**

> **(4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and**
>
> **(5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.**
>
> **(b) Disputed debts**
>
> **If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector. Collection activities and communications that do not otherwise violate this subchapter may continue during the 30-day period referred to in subsection (a) unless the consumer has notified the debt collector in writing that the debt, or any portion of the debt, is disputed or that the consumer requests the name and address of the original creditor. Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor.**

49. Section 1692g requires that a debt collector include a validation notice either with, or within five (5) days of, the initial communication from the debt collector to the consumer. This notice is intended to advise the consumer as to certain federal rights in connection with a procedure under which a consumer may dispute a debt, require verification of a debt, or obtain certain information about the original creditor within thirty (30) days after receipt of the notice from a debt collector.

50. Under the FDCPA this validation notice must be effectively communicated, and may not be overshadowed, confounded, or eviscerated by other

language or words as seen from the perspective of the unsophisticated consumer. *Chauncey v. JDR Recovery Corp.*, 118 F.3d 516, 518–19 (7th Cir.1997).

51. By stating in its Notice to Plaintiff dated September 19, 2018 that Plaintiff was required to make full payment of the alleged debt less than 30 days from the date the Notice was received by Plaintiff, Defendant confounded, overshadowed, eviscerated and incorrectly set forth the requirements of section 1692g of the FDCPA, and violated the same.

52. By failing to state or in any way communicate that Defendant was required to suspend its efforts to collect the alleged debt (through litigation or otherwise) if Plaintiff disputed the same in writing within 30 days of receipt of the Notice, and by communicating to Plaintiff that only full payment of the alleged debt would prevent suit on the alleged debt, Defendant confounded, overshadowed, eviscerated, and incorrectly set forth the requirements of section 1692g of the FDCPA, and violated the same.

53. Section § 9-104.1 of the Forcible Act provides:

**§ 9-104.1. Demand; Notice; Return; Condominium and Contract Purchasers.
(a) In case there is a contract for the purchase of such lands or tenements or in case of condominium property, the demand shall give the purchaser under such contract, or to the condominium unit owner, as the case may be, <u>at least 30 days to satisfy the terms of the demand before an action is filed.</u>**

735 Ill. Comp. Stat. 5/ 9-104.1 (emphasis added)

54. The Forcible Act thus requires that Condo Associations give 30 days *or more* to owners to satisfy the Demand made on an owner.

55. By stating that Plaintiff had 30 days from the date on the Notice to make full payment on the alleged debt, Defendant misstated Plaintiff's rights under Illinois law

to make Plaintiff believe that he had less time than he actually had, under the law, to make full payment.

56. Defendant misstated, confounded, and eviscerated Plaintiff's right to receive correct information about the alleged debt, and whether and under what circumstance he can be sued to collect the same.

57. An unsophisticated consumer would be confused by the information contained in the Notice, as he or she would not know how much time he or she would have to pay or dispute a debt before a lawsuit were filed to collect the debt in question.

58. Section 1692e provides as follows:

**§ 1692e. False or misleading representations**

**A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:**
***
**(2) The false representation of—**
**(A) the character, amount, or legal status of any debt;**
***

**(5) The threat to take any action that cannot legally be taken or that is not intended to be taken.**
***

**(10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.**

59. Defendant violated section 1692e, e(2)(A), e(5) and e(10) of the FDCPA by mailing Plaintiff a Notice in the form used by Defendant, as the information contained in the Notice falsely, deceptively, and misleadingly communicated and falsely threatened that Plaintiff could be sued on a date earlier than that allowed by law and/or earlier than Defendant intended, and also induced Plaintiff to believe that he could be sued even if he

submitted a written dispute of the debt within 30 days of his receipt of the Notice, when in fact he could not be sued by Defendant, given those facts, unless Defendant first mailed verification of the alleged debt to Plaintiff.

60. Plaintiff brings this lawsuit individually and also on behalf of themselves and all other persons similarly situated under Rules 23(a), 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure.

61. As part of Defendant's debt collection practice, Defendant regularly sends consumers form collection letters and duns consumers by telephone calls and emails, which fail to contain certain required information in violation of the FDCPA, and/or which provide the information in a confusing manner.

62. This action is brought and may properly be maintained as a class action pursuant Rule 23 of the Federal Rules of Civil Procedure. This action satisfies the numerosity, predominance, typicality, adequacy, and/or superiority requirements of those provisions. Plaintiff does not know the exact size of the class, as such information is in Defendant's possession, but Defendant regularly uses form letters such as the one at issue in this case and the volume of Defendant's business, with respect to representation of condominium associations in connection with the mailings of letters of the type mailed in in this case, is large enough so that numerosity may be presumed.

63. Common questions of law and fact exist as to all members of the class and predominate over any questions affecting individual members of the class, including Plaintiffs, including but not limited to whether Defendant's collection letter mailed to Plaintiff violated the FDCPA.

64. This class action complaint is brought on behalf of all persons who, according to Defendant's record, meet the following criteria, subject to amendment as appropriate:

**All persons, within twelve months prior to the date of filing of this action, resided in Illinois and were mailed a form collection letter by or on behalf of Defendant in the form substantially similar to Plaintiff's NOTICE AND FINAL DEMAND FOR PAYMENT dated September 19, 2018, attached hereto.**

WHEREFORE, Plaintiff respectfully requests that judgment be entered against Defendant on behalf of himself and a Class, for the following:

a) Statutory damages of $1,000.00 pursuant to 15 U.S.C. § 1692k for Plaintiff and each Class Member;

b) Plaintiff's and the Class' attorney fees and costs; and

c) Any other relief deemed appropriate by this Honorable Court.

## COUNT II—FDCPA—INDIVIDUAL COUNT

65. Plaintiff incorporates by reference the foregoing paragraphs.

66. Defendant has sought to collect various amounts, represented in Exhibit A, that are not owed by Plaintiff, in violation of 15 U.S.C. §§ 1692e and f of the FDCPA.

WHEREFORE, Plaintiff respectfully requests that judgment be entered against Defendant, for the following:

a) Statutory damages of $1,000.00 pursuant to 15 U.S.C. § 1692k for Plaintiff;

b) Plaintiff's attorney fees and costs; and

c) Any other relief deemed appropriate by this Honorable Court.

## DEMAND FOR JURY TRIAL

Please take notice that Plaintiffs hereby demand trial by jury in this action.

Respectfully Submitted,

By: /s/ M. Kris Kasalo

**The Law Office of M. Kris Kasalo, Ltd.**
20 North Clark Street, Suite 3100
Chicago, IL 60602
tele 312-726-6160
fax 312-698-5054
mario.kasalo@kasalolaw.com

## NOTICE OF LIEN AND ASSIGNMENT

Please be advised that we claim a lien upon any recovery herein for 1/3 or such amount

as a court awards. All rights relating to attorney's fees have been assigned to counsel.

Respectfully Submitted,

By: /s/ M. Kris Kasalo

**The Law Office of M. Kris Kasalo, Ltd.**
20 North Clark Street, Suite 3100
Chicago, IL 60602
tele 312-726-6160
fax 312-698-5054
mario.kasalo@kasalolaw.com